UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RJS DISTRIBUTORS, LLC, RICHARD J. STRAUBE, JR., and JODI STRAUBE, | No. 21 C 2125 |
| Plaintiffs, | Judge Jorge L. Alonso |
| v. | |
| PEPPERIDGE FARM, INCORPORATED, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Believing a lucrative store is within the exclusive territory of their distributorship, plaintiffs filed in the Circuit Court of Kane County a complaint asserting a claim for breach of contract and seeking a declaratory judgment and an accounting. Defendant removed the case to this Court and now moves to dismiss.[1] For the reasons set forth below, the Court grants in part and denies in part the motion to dismiss.

## I. BACKGROUND

The following facts are from plaintiffs' complaint, and the Court takes them as true. The Court also considers the documents attached to plaintiff's complaint. Fed.R.Civ.P. 10(c), 12(d).

---

[1] The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1). The amount in controversy exceeds $75,000.00. [Docket 1 at ¶ 4; docket 1-1 at ¶ 88]. Defendant Pepperidge Farm, Incorporated is a citizen of Connecticut (its State of incorporation and the location of its principal place of business). [Docket 1 at ¶ 12]. Plaintiffs Richard Straube, Jr. and Jodi Straube are citizens of Illinois. [Docket 1 at ¶¶ 7-8]. They are the only members of plaintiff RJS Distributors, LLC, which, thus, is also a citizen of Illinois. [Docket 1 at ¶ 10].

Defendant Pepperidge Farm, Incorporated ("Pepperidge Farm") is a producer of baked goods. Plaintiff Richard Straube, Jr. ("Richard") is the son of a long-time distributor of Pepperidge Farm products. In January 2013, Richard's father sold his distributorship to Richard for $1.00. Defendant approved the sale, contingent upon, among other things, Richard's signing "a new Consignment Agreement[.]" [Docket 1-1 at p. 32].

On or about January 28, 2013, Richard and Pepperidge Farm signed the new Consignment Agreement. It states, among other things:

> (a) BAKERY – refers to Pepperidge Farm, Incorporated, the grantor of the Distributorship . . .
>
> (b) CONSIGNEE – refers to the grantee of this Distributorship . . .
>
> (c) TERRITORY – refers to *the territory described in Schedule A hereto*.
> * * *
> 1. EXCLUSIVENESS OF DISTRIBUTORSHIP. Consignee will have the exclusive right to distribute Consigned Products to retail stores within the Territory, and Bakery will not sell or deliver or authorize any others to sell or deliver Consigned Products to retail stores (except for in-store bakeries, food-service counters and food-service sections located in retail stores) within the Territory except in connection with temporary sales programs and except for sales to direct customers pursuant to orders solicited by consignee under Paragraph 3(b); provided, however, that Bakery will have the exclusive right to distribute Consigned Products to retail facilities owned or operated by Bakery or by any corporation controlled by Bakery. . . .
> * * *
> 4. DISTRIBUTION EFFORTS. Consignee will use his/her best efforts to realize the full sales potential of the Territory for Consigned Products. To this end, Consignee will (a) actively solicit all retail stores in the Territory whose accounts can profitably be handled, (b) maintain at all times an adequate and fresh supply of Consigned Products in all such retail stores . . .
> * * *
> 18. SALES OF DISTRIBUTORSHIP. The Distributorship may not be sold, conveyed or transferred by Consignee in whole or in part without the prior written approval of Bakery. Bakery will grant such approval with respect to a proposed sale if (i) Consignee has given Bakery proper and timely notice of such proposed sale as required by Paragraph 17 . . .
> * * *
> 28. ENTIRETY OF CONSIGNMENT AGREEMENT. This Agreement represents the entire agreement between Bakery and Consignee and

supersedes any and all prior franchises, agreements or understandings between Bakery and Consignee, whether written or oral, regarding distribution of Consigned Products. This Agreement may not be amended orally or by custom or conduct but only by a writing signed by both Bakery and Consignee.

(Consignment Agreement/Docket 1-1 at 38-43) (emphasis added). Schedule A, in turn, describes the Territory as follows (in relevant part):

> In the State of Illinois, County of DuPage, Cities of Elmhurst, Lombard, Downers Grove, Oakbrook, Westmont, all that territory shown on the attached map (MapInfo Professional, Route #9003327), Richard E Straube Jr, effective 01/28/13) and more fully described as follows:
>
>> NOTE: Route-customer's establishments 'fronting' on any thoroughfare or boundary described herein (unless specified otherwise) are deemed to belong to this territory.
>
> Beginning at a point formed by the intersection of North Avenue (also known as Route 64) and Villa Avenue, thence east on North Avenue, excluding all route customers to the intersection with Interstate 294 . . . thence west on Ogden Avenue (also known as Route 34), excluding all route customers, to the intersection with Main Street (also known as Highland Avenue); *thence north on Main Street (also known as Highland Avenue) to the intersection with Butterfield Road (also known as Route 56), excluding all route customers, to the intersection with Fairfield Road; thence northwest on Fairfield Road, excluding all route customers, to the intersection with Highland Avenue; thence north on Highland Avenue, excluding all route customers on the west side,* to the intersection with Roosevelt Road (also known as Route 56), excluding all route customers . . .

(Schedule A/Docket 1-1 at 44-45) (emphasis added). The map referred to in Schedule A is also attached to plaintiff's complaint. [Docket 1-1 at 35].

About three-and-one-half years after signing the Consignment Agreement, in June 2016, Richard assigned his distributorship to plaintiff RJS Distributorship LLC ("RJS"), of which he and plaintiff Jodi Straube ("Jodi") are the only members. Defendant approved the assignment.

Plaintiffs allege that a Target store near Yorktown Center in Lombard, Illinois is within the distributorship's territory. They allege defendant has excluded the Target store from the distributorship's territory without "legitimate basis[,]" thereby breaching the Consignment

3

Agreement. Specifically, plaintiffs allege the "road running from the main entrance to the SUBJECT STORE is 'Yorktown Shopping Center,' not 'Fairfield Avenue.'" (Complt. ¶ 57). Plaintiffs also allege "the road running directly in front of each of the SUBJECT STORE'S primary entrances is 'Convention Center Drive' in Lombard, Illinois, not 'Fairfield Avenue.'" (Complt. ¶ 54).

Plaintiffs allege that their attorney sent defendant a letter in August 2020 demanding that the Target be included in the distributorship's territory. Defendant responded:

> According to the Description of Territory in our client's Consignment Agreement, all route customers on Fairfield Road from the intersection of Butterfield Road through the intersection with Highland Avenue are specifically excluded from your client's territory. This exclusion includes the Target Store located at the Yorktown Center in Lombard, Illinois.
>
> The term 'fronting' as used in the Description of Territory in your client's Consignment Agreement has been consistently interpreted by Pepperidge Farm to have the same meaning as the term 'facing.' A retail store is deemed to be 'fronting' the road on which the store's primary entrance is facing. The mailing address of the retail store is not determinative of the road on which it is 'fronting.'
>
> In 1996, using the above methodology, Pepperidge Farm concluded that the Target store at issue fronts on S[outh] Fairfield and therefore is situated in the territory belonging to the distributor (Mr. Daniel Mulhern), who at that time owned and operated the route adjacent to what is now your client's territory.

(Complt. ¶ 49).

Based on these allegations, plaintiffs assert that defendant breached the Consignment Agreement by excluding the Target Store from the distributorship's territory. Plaintiffs seek a declaration that the Target is within the distributorship's territory. Plaintiffs assert that "the revenue resulting from [a different] distributor's provision of products and services" to the Target belongs to plaintiffs, and they seek an accounting thereof. (Complt. ¶ 73).

## II.     STANDARD ON A MOTION TO DISMISS

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a claim must be plausible. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Allegations that are as consistent with lawful conduct as they are with unlawful conduct are not sufficient; rather, plaintiffs must include allegations that "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

In considering a motion to dismiss, the Court accepts as true the factual allegations in the complaint and draws permissible inferences in favor of the plaintiff. *Boucher v. Finance Syst. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018). Conclusory allegations "are not entitled to be assumed true," nor are legal conclusions. *Iqbal*, 556 U.S. at 680 & 681 (noting that a "legal conclusion" was "not entitled to the assumption of truth[;]" and rejecting, as conclusory, allegations that "'petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement"). The notice-pleading rule "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-679.

Where a plaintiff alleges a breach of contract, a district court "may determine [the contract's] meaning as a matter of law" if "the contract is unambiguous." *McWane, Inc. v. Crow*

5

*Chi. Indus., Inc.*, 224 F.3d 582, 584 (7th Cir. 2000). An "unambiguous contract controls over contrary allegations in the plaintiff's complaint." *McWane*, 224 F.3d at 584.

## III. DISCUSSION

### A. Breach of contract/declaratory judgment

In Count I, plaintiffs seek a declaratory judgment that the relevant Target store is within their distributorship's territory. In Counts III and IV, respectively, plaintiffs Richard and RJS assert claims for breach of the Consignment Agreement.

The parties agree that Illinois law applies. To prevail on a claim for breach of contract under Illinois law, a plaintiff must "establish the existence of a valid and enforceable contract, plaintiff's performance, defendant's breach of the terms of the contract, and damages resulting from the breach." *Spitz v. Proven Winners North Am., LLC*, 759 F.3d 724, 730 (7th Cir. 2014).

Under Illinois law, "[t]he construction of a contract is a question of law." *People ex rel. Dep't of Public Health v. Wiley*, 218 Ill.2d 207, 223 (Ill. 2006). If a contract is unambiguous, "the parties' intent must be derived . . . as a matter of law, solely from the writing itself." *Quake Constr., Inc. v. American Airlines, Inc.*, 141 Ill.2d 281, 288 (Ill. 1990). If, however, "the terms of an alleged contract are ambiguous or capable of more than one interpretation," then "parol evidence is admissible to ascertain the parties' intent." *Quake Constr.*, 141 Ill.2d at 288. "[B]ecause words derive their meaning from the context in which they are used, a contract must be construed as a whole, viewing each part in light of the others." *Gallagher v. Lenart*, 226 Ill.2d 208, 233 (Ill. 2007).

Reading the Consignment Agreement as a whole, the Court finds no ambiguity with respect to the boundaries of the territory of the distributorship. The Consignment Agreement says the territory includes "all that territory shown on the attached map (MapInfo Professional,

Route #9003327), Richard E Straube Jr, effective 01/28/13) and more fully described as follows:
". . . thence north on Main Street (also known as Highland Avenue) to the intersection with Butterfield Road (also known as Route 56), excluding all route customers, to the intersection with Fairfield Road; thence northwest on Fairfield Road, excluding all route customers, to the intersection with Highland Avenue; thence north on Highland Avenue . . ." [Docket 1-1 at 44]. The "attached map," in turn, reflects the boundaries of the distributorship with bold lines. [Docket 1-1 at 35]. On that map, both Butterfield Road and Highland Avenue are labeled as such. The "attached map" does not contain a label for the curved road that constitutes the portion of the bolded boundary line that runs from Butterfield to Highland Avenue, but the text description of the territory makes clear that that road is named Fairfield.[2]

Plaintiffs have attached to their complaint maps that suggest the boundary road that the contract describes as "Fairfield Road" may now be called something different, namely Yorktown Shopping Center. These maps do not create an ambiguity in the contract, however, because they are *outside* the contract. The contract itself is unambiguous with respect to the boundaries of the distributorship's territory.

---

[2] The Court takes judicial notice of the fact that, on Google maps, the road into the Yorktown Center from Butterfield Road is labeled S. Fairfield Avenue. Pursuant to Federal Rule of Evidence 201(b), this Court "may judicially notice a fact that is not subject to reasonable dispute because" it "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed.R.Evid. 201(b)(2). Courts have concluded that Google Maps is a source whose accuracy cannot be reasonably questioned for some types of information, including distances, *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1177 n. 3 (7th Cir. 2013), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016), and relative locations, *Hicks v. Cook Cty. Sheriff's Office*, Case No. 15 C 6852, 2020 WL 1322844 at *9 n. 12 (N.D. Ill. March 19, 2020), but not for the length of time travel takes, *United States v. Julius*, 14 F.4th 752, 756 (7th Cir. 2021).

The contract is also unambiguous as to whether stores along the boundary are within or without the territory. The territory boundary lines separate plaintiffs' territory from other distributors' territories, and the Consignment Agreement makes clear to which of the adjacent territories the stores along the boundary belong. Specifically, Schedule A says:

> Route-customer's establishments 'fronting' on any thoroughfare or boundary described herein (unless specified otherwise) are deemed to belong to this territory.

[Docket 1-1 at 44]. The unambiguous meaning of that phrase is that stores fronting the boundary belong to the territory unless the description says otherwise. Reading on, the description of the territory in plaintiff's Consignment Agreement explicitly excludes stores fronting on Fairfield Road. Specifically, the contract says, "to the intersection with Fairfield Road; thence northwest on Fairfield Road, excluding all route customers, to the intersection with Highland Avenue." [Docket 1-1 at 44]. The plain meaning of this language is that customers fronting Fairfield Road are excluded from plaintiffs' territory.

Next, the Court finds that the meaning of "fronting" is unambiguous. The plain meaning of "fronting" is facing, which is to say that a building is fronting on a particular street when the front of the building faces that street. This is consistent with how the Oxford English dictionary defines fronting, which is "[t]o have the front in a specified direction; to face, look." This is also consistent with how the Supreme Court of Illinois has long used the word fronting. *See Martin v. Murphy*, 221 Ill. 632, 634 (Ill. 1906).

The unambiguous meaning of the Consignment Agreement is that any store fronting on Fairfield is excluded from plaintiffs' distributorship's territory. Accordingly, to state a claim for breach of contract, plaintiffs must allege that the Target store at issue is within the territory but is not fronting on Fairfield. Plaintiffs have done so. In addition to alleging that the Target store is

within the territory of the distributorship, plaintiffs allege the "road running from the main entrance to the SUBJECT STORE is 'Yorktown Shopping Center,' not 'Fairfield Avenue.'" (Complt. ¶ 57). Plaintiffs also allege "the road running directly in front of each of the SUBJECT STORE'S primary entrances is 'Convention Center Drive' in Lombard, Illinois, not 'Fairfield Avenue.'" (Complt. ¶ 54). The Court takes these allegations as true. Whether plaintiffs can prove these allegations is a question for another day. Plaintiffs have stated a claim for breach of contract and for declaratory judgment.

### B. Claim for an accounting

In Count II, plaintiffs assert a claim for an accounting.

As the parties agree, under Illinois law, plaintiffs cannot state a claim for an accounting if they have an adequate remedy at law. *Kempner Mobile Electronics, Inc. v. Southwestern Bell Mobile Systems*, 428 F.3d 706, 715 (7th Cir. 2005) ("To state a claim for the equitable relief of an accounting, a plaintiff must allege the absence of an adequate remedy at law. . . . [T]his case is nothing more than a garden-variety contract dispute. Indeed, damages in this case are not speculative, and the amount of damages is neither difficult nor impossible to measure."). Plaintiffs seek damages for the amounts they would have earned had the relevant Target store been considered to be in their territory. They allege these damages to be at least $550,000.00. (Complt. ¶ 88). These plaintiffs have an adequate remedy at law: money damages. *See, e.g., Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 892 (7th Cir. 2011). Accordingly, the claim for an accounting is dismissed with prejudice.

## IV. CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part defendant's motion [11] to dismiss. Count II is dismissed with prejudice. Defendant's answer is due January 28, 2022. This case is set for status hearing on February 15, 2022 at 9:30 a.m. The parties shall file a joint status report on or before February 8, 2022.

**SO ORDERED.**                                            ENTERED: December 22, 2021

                                                                                      **HON. JORGE ALONSO**
                                                                                      **United States District Judge**