21UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RJS DISTRIBUTORS, LLC, <br> RICHARD J. STRAUBE, JR., and <br> JODI STRAUBE, <br><br> Plaintiffs, <br><br> v. <br><br> PEPPERIDGE FARM, INCORPORATED, <br><br> Defendant. | No. 21 C 2125 <br><br> Judge Jorge L. Alonso |

**MEMORANDUM OPINION AND ORDER**

Believing a particular Target store is within the exclusive territory of their distributorship, plaintiffs filed in the Circuit Court of Kane County a complaint asserting claims for breach of contract and seeking a declaratory judgment. Defendant removed the case to this Court.[1] After discovery, defendant filed a motion for summary judgment. For the reasons set forth below, the Court grants defendant's motion for summary judgment.

**I.      BACKGROUND**

The following facts are undisputed unless otherwise noted.[2]

---

[1] The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1). The amount in controversy exceeds $75,000.00. [Docket 1 at ¶ 4; docket 1-1 at ¶ 88]. Defendant Pepperidge Farm, Incorporated is a citizen of Connecticut (its State of incorporation and the location of its principal place of business). [Docket 1 at ¶ 12]. Plaintiffs Richard Straube, Jr. and Jodi Straube are citizens of Illinois. [Docket 1 at ¶¶ 7-8]. They are the only members of plaintiff RJS Distributors, LLC [docket 63 ¶ 8], which, thus, is also a citizen of Illinois.

[2] Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. The Court enforces Local Rule 56.1 strictly. *See FTC v. Bay Area Business Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005) ("Because of the important function local rules like Rule 56.1 serve in organizing the evidence and identifying disputed facts, we have consistently upheld the district court's discretion to

On January 28, 2013, plaintiff Richard J. Straube, Jr. ("Straube") and defendant Pepperidge Farm, Incorporated ("Pepperidge Farm") entered a Consignment Agreement under which Straube received the exclusive right to distribute certain Pepperidge Farm products within a defined territory. Later, with defendant's consent, Straube assigned his rights in the Consignment Agreement to plaintiff RJS Distributors, LLC, of which Straube and his wife, plaintiff Jodi Straube, are the only members.

*The Consignment Agreement*

The Consignment Agreement contains an integration clause, which states:

> This Agreement represents the entire agreement between Bakery and Consignee and supersedes any and all prior franchises, agreements, or understandings between Bakery and Consignee, whether written or oral, regarding distribution of Consigned Products. This Agreement may not be amended orally or by custom or conduct but only by a writing signed by both Bakery and Consignee.

---

require strict compliance with those rules."). At the summary judgment stage, a party cannot rely on allegations; he or it must put forth evidence. Fed.R.Civ.P. 56(c)(1)(A); *see also Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) ("As the 'put up or shut up' moment in a lawsuit,' summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial.").

Where one party supports a fact with admissible evidence (i.e., not complaint allegations) and the other party fails to controvert the fact with citation to admissible evidence (i.e., not complaint allegations), the Court deems the fact admitted. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-19 (7th Cir. 2015); *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004). This does not, however, absolve the party putting forth the fact of the duty to support the fact with admissible evidence. See *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012).

In considering a motion for summary judgment, this Court does not consider facts that parties failed to include in their statements of fact, because to do so would unfairly eliminate the opposing party's opportunity to show that the fact is disputed and make the Court's job of searching for disputed facts extremely difficult and excessively time consuming. *See Torres v. Alltown Bus Services, Inc.*, Case No. 05 C 2435, 2008 WL 4542959 at *1 n.1 (N.D. Ill. Apr. 28, 2011) ("To consider facts not included in a statement of facts would be unfair to the other party, because it would rob the other party of the opportunity to show such facts were controverted."), aff'd 323 Fed. Appx. 474, 475 (7th Cir. 2009) ("Since we have already held that it is not an abuse of discretion for a court to refuse to consider evidence whose manner of submission violated local rules, we cannot say that the district court abused its discretion in this case.").

(Consignment Agreement ¶ 28/Docket 63-2 at 8).

The Consignment Agreement also states that the consignee "will have the exclusive right to distribute Consigned Products to retail stores within the Territory[.]" The Consignment Agreement goes on to describe the Territory as follows (in relevant part):

> In the State of Illinois, County of DuPage, Cities of Elmhurst, Lombard, Downers Grove, Oakbrook, Westmont, *all that territory shown on the attached map* (MapInfo Professional, Route #9003327), Richard E Straube Jr, effective 01/28/13) and more fully described as follows:
>
>> NOTE: Route-customer's establishments 'fronting' on any thoroughfare or boundary described herein (unless specified otherwise) are deemed to belong to this territory.
>
> Beginning at a point formed by the intersection of North Avenue (also known as Route 64) and Villa Avenue, thence east on North Avenue, excluding all route customers to the intersection with Interstate 294 . . . thence west on Ogden Avenue (also known as Route 34), excluding all route customers, to the intersection with Main Street (also known as Highland Avenue); *thence north on Main Street (also known as Highland Avenue) to the intersection with Butterfield Road (also known as Route 56),* excluding all route customers*, to the intersection with Fairfield Road; thence **northwest** on Fairfield Road, excluding all route customers, to the intersection with Highland Avenue;* thence north on Highland Avenue, excluding all route customers on the west side, to the intersection with Roosevelt Road (also known as Route 56), excluding all route customers . . .

(Consignment Agreement Schedule A/Docket 63-2 at 9) (emphasis added). The map referred to in Schedule A is filed at Docket 63-3 and is reproduced in footnote 3.[3]

*Fairfield Road=Yorktown Shopping Center=Yorktown Mall Road*

The address of the Target store at issue in this case is 60 Yorktown Shopping Center. Plaintiff's non-retained expert, the Assistant Director of Public Works for the Village of Lombard, testified that the curved road that runs from Butterfield Road to Highland Avenue that marks the boundary of the territory is called Yorktown Shopping Center or Yorktown Mall Road. At his deposition, Straube (testifying on his own behalf and as a 30(b)(6) witness for RSJ Distributors, LLC) was asked the following questions and gave the following answers:

> Q: Yorktown Shopping Center does not appear as a name in Schedule A, correct?
> A: Correct.
> Q: What that [curved northwest] road is called in Schedule A is Fairfield Road, correct?

---

[3] 

        A:      Correct.

(Straube Dep. at 40:18-41:1/Docket 63-1). It is undisputed that the Target store at issue in this case fronts the curved northwest road that runs from Butterfield Road to Highland Avenue that marks the boundary of the territory. [Docket 63 at ¶ 14; Docket 72 ¶ 14].

Before Straube signed the Consignment Agreement with defendant, the distributorship had been owned by his father. The Target store at issue in this case opened in 1996. During the time Straube's father serviced the territory, Straube's father never serviced the Target at issue in this case. At some point, Straube's father hired Straube to service the territory. While Straube serviced the territory for his father, he never serviced the Target at issue in this case. Instead, the Target at issue in this case has been serviced, for more than twenty years, by a neighboring distributorship that is currently owned by Shaun Riley and was previously owned by Daniel Mulhern.

**II.    STANDARD ON A MOTION FOR SUMMARY JUDGMENT**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). When considering a motion for summary judgment, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1021 (7th Cir. 2018). Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

### III. DISCUSSION

Plaintiffs seek relief on three remaining claims. In Count I, plaintiffs seek a declaration that the Target store is within their exclusive territory. In Counts III and IV, plaintiffs assert that defendant breached the Consignment Agreement by excluding the Target store at issue in this case from the territory.

The parties agree that Illinois law applies. To prevail on a claim for breach of contract under Illinois law, a plaintiff must "establish the existence of a valid and enforceable contract, plaintiff's performance, defendant's breach of the terms of the contract, and damages resulting from the breach." *Spitz v. Proven Winners North Am., LLC*, 759 F.3d 724, 730 (7th Cir. 2014).

Under Illinois law, "[t]he construction of a contract is a question of law." *People ex rel. Dep't of Public Health v. Wiley*, 218 Ill.2d 207, 223 (Ill. 2006). If a contract is unambiguous, "the parties' intent must be derived . . . as a matter of law, solely from the writing itself." *Quake Constr., Inc. v. American Airlines, Inc.*, 141 Ill.2d 281, 288 (Ill. 1990). If, however, "the terms of an alleged contract are ambiguous or capable of more than one interpretation," then "parol evidence is admissible to ascertain the parties' intent." *Quake Constr.*, 141 Ill.2d at 288. "[B]ecause words derive their meaning from the context in which they are used, a contract must be construed as a whole, viewing each part in light of the others." *Gallagher v. Lenart*, 226 Ill.2d 208, 233 (Ill. 2007).

The Court has previously considered the Consignment Agreement and concluded that it is not ambiguous. Reading the Consignment Agreement as a whole, the Court again finds no ambiguity with respect to the boundaries of the territory of the distributorship. The Consignment Agreement says the territory includes "all that territory *shown on the attached map* (MapInfo Professional, Route #9003327), Richard E Straube Jr, effective 01/28/13) and more fully

6

described as follows: . . . thence north on Main Street (also known as Highland Avenue) *to the intersection with Butterfield Road (also known as Route 56), excluding all route customers, to the intersection with Fairfield Road; thence northwest on Fairfield Road, excluding all route customers, to the intersection with Highland Avenue; thence north on Highland Avenue . . .*" (Consignment Agreement Schedule A/Docket 63-2 at 9) (emphasis added). The "attached map," in turn, reflects the boundaries of the distributorship with bold lines. On that map, both Butterfield Road and Highland Avenue are labeled as such. The "attached map" does not contain a label for the curved road that runs northwest and forms the bolded boundary line from Butterfield Road to Highland Avenue. The text description of the territory describes the curved northwest road from Butterfield Road to Highland Avenue as Fairfield Road.

As the Court has previously explained, the Consignment Agreement is also unambiguous as to whether stores along the boundary are within or without the territory. The territory boundary lines separate plaintiffs' territory from other distributors' territories, and the Consignment Agreement makes clear to which of the adjacent territories the stores along the boundary belong. Specifically, Schedule A says:

> Route-customer's establishments 'fronting' on any thoroughfare or boundary described herein (unless specified otherwise) are deemed to belong to this territory.

(Consignment Agreement Schedule A/Docket 63-2 at 9). The unambiguous meaning of that phrase is that stores fronting the boundary belong to the territory unless the description says otherwise. Reading on, the description of the territory in the Consignment Agreement explicitly excludes stores fronting the curved northwest road which the contract calls Fairfield. Specifically, the contract says, "to the intersection with Fairfield Road; thence northwest on Fairfield Road, excluding all route customers, to the intersection with Highland Avenue."

(Consignment Agreement Schedule A/Docket 63-2 at 9). The plain meaning of this language is that customers fronting the curved northwest road between Butterfield Road and Highland Avenue are excluded from plaintiffs' territory.

Next, the Court again finds that the meaning of "fronting" is unambiguous. The plain meaning of "fronting" is facing, which is to say that a building is fronting on a particular street when the front of the building faces that street. This is consistent with how the Oxford English dictionary defines fronting, which is "[t]o have the front in a specified direction; to face, look." This is also consistent with how the Supreme Court of Illinois has long used the word fronting. *See Martin v. Murphy*, 221 Ill. 632, 634 (Ill. 1906).

It is clear from the unambiguous contract and the undisputed facts that the Target store at issue in this case is excluded from the territory. First, as the Court has already explained, it is clear from the map and the plain language of the contract that the curved northwest road that runs from Butterfield Road to Highland Avenue is the boundary of plaintiff's territory and that route customers fronting that road are excluded. (Consignment Agreement Schedule A/Docket 63-2 at 9). It is undisputed that the Target store at issue in this case fronts the curved northwest boundary road that runs from Butterfield Road to Highland Avenue. [Docket 63 at ¶ 14; Docket 72 ¶ 14]. Thus, it is clear that the Target store at issue is excluded from the territory.

It makes no difference that the curved northwest road from Butterfield Road to Highland Avenue that forms the boundary of the territory is called Fairfield Road by the contract and Yorktown Shopping Center or Yorktown Mall Road by the Village of Lombard. Were there no map included in the contract, the name difference might have created an ambiguity, because, in that case, there might exist more than one road running from Butterfield Road to Highland Avenue that could be thought to demarcate the boundary. In light of the map, which is part of

the contract, however, it is clear, as a matter of law, where the boundary is. The name of the road makes no difference. If, tomorrow, for example, the Village of Lombard changed the name of Butterfield Road to Smith Street, the change in the road's name would not render ambiguous the boundary of the territory. The map makes clear where the boundary is.

All that matters in this case is whether the Target at issue fronts the boundary road (i.e., the curved northwest road from Butterfield Road to Highland Avenue). It is undisputed that the Target at issue fronts that road.[4] The unambiguous meaning of the Consignment Agreement is that any store fronting the boundary formed by the curved northwest road from Butterfield Road to Highland Avenue is excluded from the territory of plaintiffs' distributorship.[5] The Target store at issue is excluded from the territory, so plaintiffs have not shown that defendant breached the Consignment Agreement.

Defendant is entitled to judgment as a matter of law on plaintiffs' claims for breach of contract and on their claim for declaratory relief. Defendant's motion for summary judgment is granted.

---

[4] Although it is undisputed that the Target at issue fronts the curved boundary road, plaintiffs argue that the Target also fronts a second street. That does not matter. Plaintiffs do not point to any language in the contract that suggests a second frontage would somehow put the Target back into the territory. The only fact material to this case is whether Target fronts the curved northwest road between Butterfield Road and Highland Avenue that forms the territory's boundary. It is undisputed that the Target at issue in this case fronts that road.

[5] The Court notes, too, that even if the contract were ambiguous, the defendant would still be entitled to judgment as a matter of law, because undisputed parol evidence would make clear that the parties' intent was to exclude the Target from the territory. Specifically, it is undisputed that the Target has never been serviced by Straube or Straube's father, who serviced the territory before Straube. It is undisputed that the Target has, instead, been serviced by the neighboring territory for more than twenty years.

IV.	CONCLUSION

      For all of these reasons, the Court grants defendant's motion [62] for summary judgment. Defendant is entitled to judgment as a matter of law on Counts I, III and IV. Civil case terminated.


**SO ORDERED.**					ENTERED: November 9, 2022

                                                        **HON. JORGE ALONSO**
                                                        **United States District Judge**